**John RUSSELL, et al., Plaintiffs**

**v.**

**Alison Lundergan GRIMES, Secretary of State of the Commonwealth of Kentucky, et al., Defendants.**

Civil Action No. 14–112(WOB–JGW).

United States District Court,
E.D. Kentucky,
Northern Division,
at Covington.

Signed Oct. 14, 2014.

Brandon N. Voelker, Cold Spring, KY, Christopher David Wiest, Christopher Wiest, Atty. at Law, PLLC, Crestview Hills, KY, Jack S. Gatlin, Thomas B. Bruns,

Freund, Freeze & Arnold, Ft. Mitchell, KY, for Plaintiffs.

Lynn Sowards Zellen, Kentucky Secretary of State, Jacob Clark Walbourn, Jessica R.C. Malloy, Laura Shannon Crittenden, Attorney General's Office, Frankfort, KY, Jeffrey C. Mando, Jennifer Haddad Langen, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

WILLIAM O. BERTELSMAN, District Judge.

This matter is before the Court following a hearing and consolidated trial on the merits of Plaintiffs' Amended Motion for Preliminary and Permanent Injunction (Doc. 36) on October 13, 2014. Having heard argument and reviewed the parties' filings, the Court now issues the following Findings of Fact and Conclusions of Law and Order. *See* Fed.R.Civ.P. 52(a)(1).

## I. *INTRODUCTION*

Plaintiffs John Russell and Campbell County Auto Body, Inc. (collectively "Plaintiffs") filed a 42 U.S.C. § 1983 suit against Defendants: Jack Conway, in his official capacity as Kentucky Attorney General; Alison Lundergan Grimes, in her official capacity as Kentucky Secretary of State and Chair of the Kentucky State Board of Elections ("KSBE"); Maryellen Allen, in her official capacity as Executive Director of the KSBE; David Cross, John Hampton, Stephen Huffman, Denise May, George Russell, and Ronald Morgan, in their official capacities as Members of the KSBE (collectively "State Board Defen-

dants"); Jack Snodgrass, in his official capacity as Campbell County Clerk and a Member of the Campbell County Board of Elections ("CCBE"); Jeff Kidwell, in his official capacity as Campbell County Sheriff and a Member of the CCBE; John Fisher and Catherine Longshore, in their official capacities as Members of the CCBE; Steve Franzen, in his official capacity as Campbell County Attorney; and John Does 1–4, in their official capacities as Campbell County Deputy Sheriffs (collectively "County Defendants"). Plaintiffs bring a facial challenge, or in the alternative an as-applied challenge, to the constitutionality of the Commonwealth of Kentucky's electioneering ban, Ky.Rev.Stat. § 117.235(3), alleging that it violates their First Amendment free speech rights.[1]

## II. *PROCEDURAL HISTORY*

Plaintiffs filed this lawsuit on June 16, 2014, and subsequently filed a Motion for Preliminary Injunction on September 10. (Docs. 1, 25.) On July 7, the Attorney General filed a motion to dismiss the complaint (Doc. 12). The State Board Defendants filed a motion to dismiss on July 10 (Doc. 13). After a hearing on September 15, the Court denied the motions to dismiss (Doc. 27).

Plaintiffs subsequently filed an Amended Complaint on September 29 (Doc. 28) and an Amended Motion for Preliminary and Permanent Injunction on October 2 (Doc. 36).

After Plaintiffs filed their amended motion for an injunction, they entered into a settlement with the County Defendants (Doc. 37).

The parties have fully briefed the preliminary injunction motion. (*See* Docs. 36,

---

1. Because Plaintiffs sued all of the defendants in their official capacities only, Plaintiffs seek no damages from the defendants personally.

44, 45, 46, 53.) The Court held a hearing and, by agreement of the parties, consolidated the trial on the merits with the hearing on the motion for preliminary injunction. Fed.R.Civ.P. 65(a)(2).

### III. *FINDINGS OF FACT*

On October 10, 2014, for purposes of the amended motion for an injunction, the parties agreed and stipulated to the facts alleged in paragraphs 1–17 and 19 of Plaintiff John Russell's declaration (Doc. 36–2). Those facts are as follows:

1. Plaintiff John Russell is one of the owners and the President of Campbell County Auto Body, Inc.

2. In 2012, in his personal capacity and as President of Campbell County Auto Body, Russell gave permission and invited several candidates for office to place political signs in the green space located at 4411 Alexandria Pike, Cold Spring, Kentucky 41076, which is owned by Campbell County Auto Body. Russell gave this permission for both the 2012 primary and general elections; Russell's permission denoted his support of certain candidates from both political parties.

3. In 2012, the candidates to whom Russell gave permission to place signs in the area actually placed such signs there prior to the dates of the primary and general elections.

4. The signs placed in 2012 were plain political signs that did not flash and were affixed to the ground. The signs were not actively held by any person, did not impede any person or traffic, and did not otherwise interfere in any way with the act of voting by any person.

5. On the dates of the 2012 primary and general elections, John Does 1 and 2, Campbell County Deputy Sheriffs, removed political signs from the above premises. The deputies indicated that they were enforcing Kentucky Revised Statutes section 117.235(3) when they removed the signs, because the premises were within 300 feet of a polling place located at First Baptist Church, 4410 Alexandria Pike, Cold Spring, Kentucky 41076 ("Polling Place"). Russell objected to the actions of John Does 1 and 2 without success.

6. A distance of approximately 150 feet, as well as four-lane U.S. Highway 27 and the guardrails for that highway, separate the Plaintiffs' premises from the Polling Place.

7. Prior to the 2014 primary election, in his personal capacity and as President of Campbell County Auto Body, Russell gave permission and invited several candidates for office to place political signs on the premises. Those candidates included Steve Pendery, a Republican candidate for Campbell County Judge/Executive, and Scott Hildebrand, a Democratic candidate for Campbell County Sheriff. Russell's permission denoted his support of the candidates.

8. Weeks prior to the 2014 primary elections, the candidates placed their political signs on the premises with Russell's assistance.

9. The signs placed in 2014 were plain political signs that did not flash and were affixed to the ground. The signs were not actively held by any person, did not disrupt any person, impede traffic, and did not otherwise interfere in any way with the act of voting by any person.

10. On Tuesday, May 20, 2014, the date of the 2014 primary election, John Does 3 and 4, Campbell County Deputy Sheriffs, removed these political signs. The deputies indicated that they were enforcing Kentucky Revised Statutes section 117.235(3) because the signs were within 300 feet of

the Polling Place. Russell again objected without success.

11. For future elections, Plaintiffs intend to provide permission to candidates they support to place signs on the premises and to assist candidates with the placement of those signs. Specifically, Plaintiffs have already given permission to two candidates to place signs prior to the upcoming general election on November 4, 2014. Plaintiffs will place, or cause to be placed, signs for that election.

12. During the general election on November 4, 2014, and on future election days, Russell intends to stand on the premises within 300 feet of the Polling Place while holding and waving signs for candidates he supports. Russell also intends to pass out leaflets and literature for the candidates he supports and speak to pedestrians within 300 feet of the Polling Place, asking them to vote for candidates he supports and not to vote for candidates he opposes, during the general election on November 4, 2014 and future election days.

13. At approximately noon during the general election on November 4, 2014, and on future election days, Russell intends to walk across the highway and stand on the grass in front of the Polling Place between 200 and 300 feet from its entrance, near the intersection of Alexandria Pike and Murnan Road. While standing in that area, Russell intends to waive or hold elections signs for candidates he supports that are approximately two feet square. If voters of other persons approach Russell, he intends to pass out leaflets and literature for the candidates he supports and speak to those persons, asking them to vote for candidates he supports and not to vote for candidates he opposes. Russell will not, however, approach any voter uninvited by that voter, enter the parking lot of the Polling Place, or obstruct any voter's free access to the Polling Place. Russell does not intend to and will not disrupt any person, impede traffic, or otherwise interfere in any way with the act of voting by any person. It is not foreseeable that Russell's activities will do so.

14. The parties also stipulated that Russell has a subjective fear of prosecution under Kentucky Revised Statutes section 117.235(3).

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction

The Court has jurisdiction because this case arises under the First and Fourteenth Amendments to the Constitution of the United States and is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

### B. Scope of the Electioneering Ban

The electioneering ban contained in Kentucky Revised Statutes section 117.235(3) provides:

No person shall electioneer at the polling place on the day of any election, as established in KRS 118.025, within a distance of three hundred (300) feet of any entrance to a building in which a voting machine is located if that entrance is unlocked and is used by voters on election day, unless the fiscal court or legislative body of an urban-county, charter county, or consolidated local government, on a countywide basis, specifically prohibits electioneering on the day of any election by ordinance for a distance greater than three hundred (300) feet from the polling place. No person shall electioneer within the interior of a building or affix any electioneering materials to the exterior or interior of a building where the county clerk's office is located, or any building designated by the county board of elections and approved by the State Board

of Elections for absentee voting, during the hours absentee voting is being conducted in the building by the county clerk pursuant to KRS 117.085(1)(c). Electioneering shall include the displaying of signs, the distribution of campaign literature, cards, or handbills, the soliciting of signatures to any petition, or the solicitation of votes for or against any bona fide candidate or ballot question in a manner which expressly advocates the election or defeat of the candidate or expressly advocates the passage or defeat of the ballot question, but shall not include exit polling or other exceptions established by the State Board of Elections through the promulgation of administrative regulations.

The KSBE has promulgated only one exception to the electioneering ban. That exception provides: "Electioneering shall not include a bumper sticker affixed to a person's car while parked within or passing through a distance of 300 feet of any polling place on the day of any election for a reasonable amount of time in which to vote." 31 Ky. Admin. Reg. 4:170.

The electioneering ban in Kentucky Revised Statutes section 117.235(3) is unambiguous and encompasses all of the conduct that Russell engaged in during prior elections, as well as conduct that he alleges he intends to engage in during future elections.[2]

### C. *First Amendment Challenge*

The Court, with the agreement of all parties, has elected to combine the hearing on the motion for preliminary injunction with a decision on the merits. Fed. R.Civ.P. 65(a)(2).

Therefore, the Court—having concluded as explained below that the statute under consideration is not "narrowly tailored" and does not survive "exacting scrutiny"—will enter a permanent injunction against its enforcement.

The principles concerning the validity of statutes regulating electioneering activities at or near polling places are well established in the abstract, but extremely difficult to apply in concrete situations. This is because polling places may be located in a wide variety of locations with varying open spaces, adjoining public thoroughfares and private property with or without private residences.

■ The precedents recognize that, in this context, principles ensuring protection of the First Amendment right to political speech may be restricted if required by a compelling interest in preventing election fraud and intimidation. *Burson v. Freeman*, 504 U.S. 191, 206, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992) (plurality opinion); *Anderson v. Spear*, 356 F.3d 651, 656–67 (6th Cir.2004).

"[S]ome restricted zone [for electioneering] is necessary in order to serve the States' compelling interests in preventing voter intimidation and election fraud." *Burson*, 504 U.S. at 206, 112 S.Ct. 1846. Because the restrictions on electioneering activities regulate "content-based" expression, they "must be subjected to exacting scrutiny." *Id.* at 198, 112 S.Ct. 1846. The State must show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' *Id.*

"The real question then is how large a restricted zone is permissible or sufficient-

---

**2.** The parties and the Court agree that, because Plaintiffs bring a facial challenge to the constitutionality of the electioneering ban, the Court is not at liberty to apply a limiting construction, such as reducing the scope of the ban to 100 feet or reading a private property exception into the statute.

ly tailored." *Id.* at 208, 112 S.Ct. 1846. In order to establish narrow tailoring in this specific context, "the state must demonstrate that [the statute] is 'reasonable and does not *significantly impinge* on constitutionally protected rights.'" *Spear,* 356 F.3d at 656 (quoting *Burson,* 504 U.S. at 209, 112 S.Ct. 1846).

The *Burson* Court upheld a 100–foot radius that restricted electioneering around polling places. The statute at issue in *Burson* also prohibited the "display or distribution of campaign materials" within this zone. The Court observed: "Given the conflict between [the necessity of preventing fraud and intimidation vs. the exercise of free speech rights] we hold that requiring solicitors to stand 100 feet from the entrances to polling places does not constitute an unconstitutional compromise." *Burson,* 504 U.S. at 211, 112 S.Ct. 1846.

In *Anderson v. Spear,* 356 F.3d 651 (6th Cir.2004), the Sixth Circuit held that a Kentucky statute—substantially similar to the one before the Court here except that it prescribed a 500–foot ban on electioneering—was overbroad and invalid: "Accordingly, because the statute is overbroad in that it prohibits speech over too much geography and because, absent a narrowing construction it prohibits more speech than is necessary to meet the State's protected interest, [the statute is invalid]." *Id.* at 666.

■ This Court holds that—although the prohibited zone is 300 rather than 500 feet—Kentucky Revised Statutes section 117.235(3) suffers from the same infirmity. A 300–foot zone is a far greater distance than is necessary to prevent the targeted evils. As in the present case, such a distance can run across busy streets and highways. It can cover areas, including private yards, not even visible from the polling place. It prohibits activities in private homes. Indeed, the Court fails to see how the typical, stationary yard sign could ever intimidate a voter or abet election fraud, unless it was blocking the entrance to the polling place.

As *Burson* indicates, some zone is necessary to protect the State's interests, but the zone prescribed by the instant statute prohibits constitutionally protected speech in an area nine times greater than that the Supreme Court somewhat reluctantly approved in that case. Defendants thus have not met their burden to show that Kentucky Revised Statutes section 117.235(3) is reasonable and does not significantly impinge on constitutionally protected rights.

Therefore, **IT IS ORDERED THAT:**

(1) The Proposed Agreed Order/Stipulation of Consent/Agreed Judgment and Injunctions by and between Plaintiffs and County Defendants (Doc. 37) be, and is hereby, **APPROVED;**

(2) The Attorney General's Motion for Extension of Time to file a response (Doc. 47) be, and is hereby, **GRANTED;**

(3) The parties' Proposed Agreed Order/ Stipulation (Doc. 49) be, and is hereby, **GRANTED;**

(4) Plaintiffs' Motion for Preliminary Injunction (Doc. 25) be, and is hereby, **DENIED AS MOOT;**

(5) Plaintiffs' Amended Motion for Preliminary and Permanent Injunction (Doc. 36) be, and is hereby, **GRANTED;** and

(6) A separate permanent injunction shall enter concurrently herewith.

(7) A separate judgment shall enter concurrently herewith.